All right, if the clerk could please call the case. 3-24-0697 Commonwealth Edison Company Appellant v. Illinois Commerce Comm'n Appley. Are the parties ready to proceed? Yes, your honor. All right, Ms. Woody, you may proceed. Thank you. May it please the court. My name is Monique Woody and I represent Appellant Commonwealth Edison in this appeal. Before I begin, comment would like to underscore its request that this court issue its order in this matter in time for the mandate to issue no later than November 4th of 2025 so that if necessary, comment has sufficient time to make any rate adjustments without running afoul of Illinois' prohibition on retroactive rate making. To the extent this court has questions related to that request, I am happy to address them. Otherwise, I will now move directly into my argument. This court in Hartigan set a very clear rule that a utility's actual capital structure must be adopted unless there is affirmative evidence that the utility's actual capital structure is imprudent and unreasonable. The commission's decision violates this simple and long-standing principle by committing two legal errors. The first, by inverting the burden of proof to require comment to exceed its prima facie burden, and the second, by equating the prudence and reasonableness standard with the requirement for optimality. Where this court agrees that the commission committed either or both of these errors, reversal is required. Now, turning to that first point, section 16108.5c provides, in no uncertain terms, that a utility's rates shall reflect the utility's actual capital structure subject to a determination of prudence and reasonableness consistent with commission practice and law. Which then begs the question, what do we mean exactly when we say consistent with commission practice and law? For decades, review of a utility's capital structure under commission practice and law has had a singular meaning, and that is that affirmative evidence must be presented demonstrating unreasonableness and imprudence in order for a commission to adopt a hypothetical capital structure. We see this not just in this court's decision in Hartigan, but also in various commission cases going as far back as the commission's decision in a 1987 NICOR case under docket number 87-0032. We also see it in recent decisions, another 2019 NICOR decision under docket number 18-1775, and a 2021 Ameren decision under docket number 20-0308. This is also bolstered by section 16108.5d of the Public Utilities Act, which provides that during the hearing, each objection shall be stated with particularity and evidence must be provided in support thereof, after which the utility shall have the opportunity to rebut the evidence. What this tells us is that contrary to what the commission has argued, and it's simply incorrect and insufficient to say to utilities that you just have to offer more, a plain reading of both 16108.5c and d can only logically support one interpretation, and that is that utilities must be able to present their capital structure along with the factors relevant to that decision, and then the commission or other interveners can then come in and say, well, here are the factors we looked at, we disagree, here's the evidence in support of that, at which point the utility has an opportunity to rebut. Any other interpretation of 16108.5 is illogical and unworkable. The commission's interpretation would set an untenable standard that requires utilities to predict the future and anticipate and address any and all issues that are conceivably relevant to the question of its rates and capital structure. But the first district in Chicago versus Illinois Commerce Commission recognized the strain that this would place on utilities and rejected this notion, explicitly stating that it was based entirely on an erroneous assumption that a utility bears the burden going forward on any and all issues which are conceivably relevant to the reasonableness of its proposed rates. And it makes sense that review of utilities' capital structure would be reviewed in this way. There's no debate that a utility's capital structure determination is one that pertains directly to a utility's financial and business management. The commission's interpretation would require utilities to search for the singular choice that may be deemed optimal by the regulator rather than engage in a balanced and reasonable approach based on factors known at the time of the utility's decision. But we know that a requirement that utilities behave as if the regulator is at the table when the utility makes its capital structure determination directly violates Illinois law that states, in no uncertain terms, that a public utility commission cannot substitute its judgment for that of the directors and financial managers of a corporation so long as that decision making is reasonable. And we see this outlined by the Illinois Supreme Court and state public utilities commission versus Springfield Gas and Electric Company. The commission's role is limited to evaluating whether a utility's decision making has breached the outer bounds of reasonableness. Additionally, a capital structure determination, unlike many other components of utilities rates, is already inherently constrained through market competition. Unlike other areas, a utility's capital structure determination is largely impacted by its need to participate in a market where companies are already competing to attract the same investors who are simultaneously shopping around for the most viable and dependable investments. Now, the commission argues that section 9201 and 9230 requires that the burden of proof as it relates to ComEd's capital structure remains with ComEd throughout the proceeding. And aside from the fact that neither of these arguments can or should be used to support the commission's determination because neither of them were relied upon by the commission when it issued its order, neither of those provisions alter or expand ComEd's responsibility in this instance. Section 9230 applies only when the evidentiary record bears out a possibility of increased equity or added leverage associated with a utility's parent company. There is no such evidence in this case. And while section 9201 applies to a utility's general burden to demonstrate its rates are just and reasonable, we've already discussed that the first district in Chicago v. Illinois Commerce Commission has rejected the idea that that necessarily means that this burden applies to every component or issue relevant to a utility's proposed rates. So, in the end, the only logical reading of 16108.5 left is that within the narrow and specific context of a utility's capital structure, ComEd's burden was met upon the submission of its actual capital structure, at which point it became the challenger's responsibility to state any specific objections to ComEd's structure and offer affirmative supportive evidence under 16108.5d. The commission failed to adhere to this standard and for that reason should be reversed. Now, the commission's second error lies in its inexplicable departure from the well-established prudence and reasonable standard. Entrenched in the law as the principle, their prudence and reasonableness permits a range of outcomes rather than a singular correct decision. And as the commission itself recognized in its decision in Commonwealth Edison under docket number 16-0259, a utility's capital structure is still prudent even if the utility could have made a different decision or even a better decision before the eyes of the commission. What does ComEd say the legal standard is for prudence under C-2? Under C-2? Your Honor, so the standard for prudence is what it's always been, which is what the statute recognizes, right? That a prudent decision permits a range of permissible outcomes. And what we have to take into consideration at that time is what were the facts that were known to the utility at the time that that decision was made. And so contrary to the commission is arguing, the utility is not required to come up with a singular correct decision. It can be that at the time the decision is made, there are a number of unforeseeable scenarios that by the time we get to the end of the year, a different decision may have rendered a different or using the commission's terms, a more optimal income. But prudence requires and recognizes that reasonable persons can have a difference of opinion without coming to a conclusion that one is necessarily wrong. And as the commission noted, again, to find imprudence, specific record evidence has to show that the utility's chosen capital structure was outside the realm of reasoned disagreement based on the information available at the time it was made. And so put simply, so long as the utility's decision is reasonable, it must stand. While the commission may review the outcomes associated with the exercise of the utility's judgment, the commission cannot conduct that review in a manner that leverages the wisdom of hindsight and imposes an untenable requirement that the utility make a singular optimal choice. And yet this is the very tenor of the commission's determination and argument in the present appeal. The common equity ratio was, quote, not optimal or was more than necessary for the utility to maintain its financial standing. The commission's determination rests solely on the premise that ComEd's previous equity ratios had never exceeded 50 percent and that because ComEd had previously maintained its financial position with a common equity ratio less than 50 percent, anything greater would be unnecessary or less than optimal. In other words, because ComEd, in other words, the commission argues that because ComEd with their equity ratio of less than 50 percent has never resulted in facing bankruptcy or insolvency or downgrading its credit rating, then ComEd's capital structure must be unreasonable or imprudent. But that is not the standard. Going back to your question, Justin Brennan, the standard is prudence and reasonableness, and we have to look at the range of permissible outcomes. The commission never explained or offered anything in support of a determination that 15 percent, 50 percent was reasonable, but ComEd's actual equity ratio, which was merely 0.07 percent higher, was not. A capital structure determination includes a consideration of various financial and market conditions and factors that can vary significantly from year to year or sometimes even within the same year, as well as any number of unforeseeable scenarios related to weather or regulatory and legal impacts that can alter a utility's financial forecast by year end. A utility's judgment decision, as with capital structure, must consider an account for the unknown at the time that that decision is made, and it may very well be that at years in, a different decision would have rendered a more optimal outcome, but that cannot be known at the time the decision was made, and it does not render the utility's decision unreasonable. The commission's retrospective review merely substitutes what would have been optimal or preferred for what was otherwise a reasonable and prudent decision at the time it was made. Where this court finds that the commission committed either of these errors by either applying an incorrect burden or applying the wrong prudence and reasonableness standard, the reversal is mandatory. It is not possible to come to the same conclusion that the commission did when the correct burden and prudence and reasonableness standards are applied. Applying the correct burden to the record before the commission in this court highlights the fact that the commission never offered any evidence which is required under 16108.5d that rebutted the evidence and testimony of comment outlining the market conditions and factors relating to ComEd's capital structure. As we see if we take a look at the Apple Canyon Lake Property Owners Association v. Illinois Commerce Commission case, in order to effectively rebut ComEd's evidence, the commission would have needed to impeach that testimony and evidence presented by ComEd. It did not. A recitation of ComEd's historical performance does not impeach ComEd's direct evidence regarding the factors and conditions that supported ComEd's 2023 actual capital structure. Can I ask you, what do you say to this argument that Apple Canyon and those cases really are talking about the burden of production as opposed to the ultimate burden of proof? Yes, so your honor, the commission uses our to suggest that what shifts in relation to who carries the burden throughout the proceeding means that their interpretation is that that means that ComEd carries the burden of proof throughout the entire proceeding, while they just have to present documentary evidence refuting the testimony evidence that ComEd has put forth. There are two responses to that. The first is that this court should not accept that particular argument because, again, it's grounded in the commission's kind of larger argument related to a utility's burden under that general 9201 just and reasonable in its framework for rate making. But we've already discussed that that requirement, as the first district laid out in Chicago versus ICC, does not necessarily apply to each and every component of a utility's rates. The second part of this is that even if that were the case, the commission didn't offer documentation that impeached ComEd's testimony or evidence. If we take a look at the record, ComEd provided its actual capital structure and supported that with direct testimony related to the market conditions and factors that supported ComEd's actual capital structure in 2023. What the commission provided then on rebuttal is kind of this historical analysis. They're really just focused on what ComEd's equity ratios had historically been. That does nothing, that's not a production of evidence that actually impeaches the direct testimony evidence that was offered by ComEd in support of its actual capital structure within that year. You may conclude. Application of the, I'm sorry, for those reasons ComEd respectfully requests that this court reverse the commission's determination rejecting ComEd's actual capital structure and again requested that this court render its decision in time for the mandate to issue by November 4th of 2025. Thank you. Justice Holdred or Justice Peterson, any questions at this time? I have no questions at this time. Very well. Mr. Stanton. Thank you, your honor. May it please the court. Tom Stanton, Special Assistant Attorney General on behalf of Illinois Commerce Commission. This is a rate making proceeding under the Public Utilities Act and whereas here the commission enters upon a hearing concerning the appropriateness of a utility's proposed rates, the burden is on the utility to prove that those rates are just and reasonable. That's section 921c of the Public Utilities Act. That section also directs the commission in that hearing to establish the utility's rates or other charges that it finds to be just and reasonable. And the act also requires ComEd to prove that the actual cost of its revenue requirement components are prudently incurred and reasonable in amount and that's sections 16108.5c and d. And those subsections require the commission to apply the same evidentiary standards in formula rate hearings that applies in a hearing to review a filing for general increase in rates under article 9. That's the burden of proof. Based on the record evidence, the commission found that ComEd did not demonstrate that a capital structure with a 50.07% common equity was prudent and reasonable. In particular, the commission found that ComEd's evidence did not support its argument that a heightened inflationary environment necessitates a capital structure of 50.07% common equity. That was ComEd's argument, that market conditions necessitated a capital structure with 50.07. And the commission said, simply citing those current economic conditions without explaining their connection to the proposed capital structure, that that was inadequate. And those findings are at page 25 of the commission's order. Let me ask a question that talks to another aspect to that. How do you respond to ComEd's argument that the commission's reliance on NIAM's testimony was misplaced because NIAM did not address market conditions? No, he reviewed their testimony. He reviewed the testimony of Isbel, he reviewed the testimony of Decker, and he reviewed the testimony of Dixion. And his opinion was that ComEd did not demonstrate that a common equity ratio of 50.07% was necessary for the company to maintain its financial structure or financial integrity and to improve its credit rating and to attract capital on a reasonable term. So he reviewed that. And his determination was it was sufficient based on his expert opinion. He reviewed the ComEd's prior history, and his opinion was not simply based on that. He also reviewed the testimony of the other witnesses from ComEd, and he specifically testified that ComEd had not demonstrated that a common equity ratio of 50.07%. So in other words, that they didn't demonstrate the market conditions necessitated that common equity ratio. Counsel, I guess we're getting kind of circular. I think Ms. Woody's point, and it goes to Justice Burnham's question, is that you're standing on the entirety of what you're putting under the category of, quote, evidence, end quote, is that opinion, that this is the way it's always been done and it's always been okay. No, no. What other information was offered? What other evidence, as we think of evidence, was offered by... Well, right. So the commission reviewed ComEd's itself, and it found that ComEd's evidence did not support the 50.07% common equity ratio. Ms. Isbell was a capital structure witness. She relied on Mr. Decker's testimony. Now, Mr. Decker's testimony could support the general increase in the cost of debt and the cost of equity. The commission accepted that, the absolute numbers. But his testimony does not address, explain, or justify ComEd's choice of the equity debt mixture. That's the issue with the capital structure. It's not about the cost of the debt and equity. The commission accepted those. So the commission looked at ComEd's evidence and found it was insufficient. It didn't prove, it didn't demonstrate their sole argument was based on market conditions, this kind of heightened inflationary environment. I know everything is complex, but wasn't it just the cost of borrowing money's up in that year? It's gone up significantly in a short time? Yeah, absolutely. I might be oversimplifying, which I tend to do, but... No, no, no. You're absolutely right. And the commission accepted that. So Decker testified that ComEd's cost of equity increased year over year. And I believe the cost of equity was 8.91 in 2022. And in 2023, it was 9.89. The commission accepted the cost of equity had increased and the capital structure issue was ComEd's discretionary choice. What percentage of the capital structure would be equity? What percentage of the capital structure would be debt? And that's where Decker's testimony doesn't address that. And Isbell's testimony, she simply said, just relied on market conditions, said these market conditions necessitated the capital structure with a 50.07% equity. But she didn't provide any, she didn't identify any of the reasons that supported those conclusory assertions. She just said, it's the appropriate risk. It appropriately balances debt holders, rate payers, and equity holders. And that it's the appropriate financial risk and it's consistent with financial, you know, with sound financial practice. But she didn't give out any factors. So she didn't give the commission, there was no basis for the commission determined to evaluate the reasonableness and prudence of that testimony because she didn't identify the factors. They were just conclusory. And the commission- Okay, let's take that and stop it right there. What if you were on the other side, what are you saying are the appropriate factors and what would you like to see have been presented, let's say, you know, to the commission? You're saying it's sufficient. Yeah, sure. So exactly what Mr. Naimi said. He said that a 50.07% was more than reasonably necessary. So the standard is, ComEd must present costs that are reasonably necessary for its service, not only operating expenses, the rate base, and also the rate of return of the cap structure. So the commission's analysis is always looking to see whether it's more than reasonably necessary. And that's a judgment call, fact specific, depends in each case. And in this case, ComEd's only justification for why it had a 50.07% common equity ratio was based on market conditions. But that doesn't get to the mix. It gets to, sure, the cost of debt rose year over year and the cost of equity, and the commission accepted that. And that's reflected in the cost of debt and the cost of equity that the commission approved. But that doesn't get to the reasons why the company chose 50.07 or 54 or some other number. That's what the commission is looking at. And that's what the commission found that the company did not support with evidence. What about your opponent's statement that the commission isn't in the boardroom making these decisions, nor is that their position, a proper position? So that there is, as I understand it, a range of what's reasonable and prudent. Sure. So the only information that the commission had here was ComEd's 50.07% common equity ratio, but the commission found that the ComEd did not justify. And it also had a 50% common equity ratio testified by NIAMI. And I just want to repeat, his testimony was not simply based. ComEd is mischaracterizing his testimony by saying his testimony is based solely on, well, ComEd had below 50% common equity ratio through 2011 through 2022. Therefore, we're just going to do a 50%. That's not what his testimony was. He relied on that, but then he used his expert judgment to determine that it would be sufficient for ComEd to, again, the factors that the commission would consider. Can the company attract capital on reasonable terms? Will it maintain its financial strength? And even ComEd's witness, Dixie Ong, she testified that if the commission were to use a 50% common equity ratio, that it would result in the same 7.02% weighted average cost of capital. So there's no difference in the amount of the rate of return to ComEd's investors. And she had the opportunity. Opposing counsel talks about, well, the commission is establishing a rule that the company must go the lowest possible level of common equity in its capital structure before it would face a credit downgrade. That's not this case at all. That's not the rule that the commission applied. The commission was just looking at the particular facts in this case and ComEd's only justification, and I would encourage you to look at the testimony, confirming the testimony. Their only justification was based on market conditions in 2023. And again, can I ask a question? If the decision is how much we're going to borrow, how much stock are we going to sell to balance this thing out? What other than market conditions, explain to me what you would have expected. Isn't that what those two topics are entirely about, is market conditions? Yeah, but what I'm saying is ComEd did not justify its reasons were market conditions, and it just relied on Decker's testimony. Yeah, year over year, our debt costs were higher and our equity costs are higher. The staff witness agreed with that and the commission agreed with that too. So they're entitled to a higher cost of equity and a higher cost of debt. But the issue with the capital structure is what percentage are we going to use? More equity, which is more expensive to rate payers, or can we achieve the same result with less equity in the capital structure? So that's the issue. It's not the absolute levels of the amount of debt or the amount of equity, it's the mixture. And again, ComEd's sole justification for that 50.07% common equity ratio was simply market conditions, inflation. But that doesn't get to the issue that on the cap structure is what did ComEd consider? What factors did it consider to use a 50.07% versus a 50% versus a 49% versus a 53%? That's what the commission found. The commission didn't find that ComEd's capital structure was imprudent. It didn't find that it was not optimal. That's ComEd mischaracterizing the commission's order. If you look at page 25 of the order, the findings that I'm talking about, those were the findings that the commission made that ComEd did not demonstrate. So, Mr. Stanton, if we were to disagree with the commission on the burden question, is there evidence to support the commission's position? Absolutely. Absolutely. Again, the commission found, even burdens aside, the commission had all the evidence before it and it found ComEd's justification was inadequate. But if you look at staff witness Naomi's testimony, absolutely. He testified to his opinion that a 50% common equity ratio would be sufficient. And I would point to the court, to the Metro Utilities case that we cited in our brief. In that case, the staff witness testified that the utility could refinance its loan based on the market conditions and would result in less cost. The commission agreed with that and the court affirmed that on appeal. That was sufficient evidence for the commission's finding that the company could have lowered its cost. And staff witness Naomi's testimony is evidence for the commission that supported the commission's decision that a 50% common equity ratio was sufficient. And so the difference, it sounds small, it sounds full of seven basis points, but rate payers have the right to pay for a capital structure that's no more than reasonably necessary. And so in this case, using ComEd's 50.07% common equity ratio causes a $1.2 million in additional cost to rate payers, and they pay for the same service. They're getting the same service. And that was the testimony of Naomi. 50% common equity ratio was sufficient. 50.07, that's $1.2 million increase for the same exact service. He testified again that ComEd would be able to maintain its financial strength with a 50% as opposed to a 50.07. It would be able to attract capital. And these are the conditions that the commission evaluates when it's looking at the finances. They would be able to attract capital on reasonable terms. So that's the difference. It's no more than reasonably necessary. So if it's not necessary for a 50.07, that's just a $1.2 million that rate payers have to pay for the exact same service. Again, because the commission found that a 50% common equity ratio would be sufficient to do all the things that ComEd needed to do. Provided services, reasonably provided services, no problem. Again, attract capital on reasonable terms, it can. The 7.02% rate of return for its investors is the same whether it's the 50.07 or the 50%. And again, we would point to Mr. Naomi's testimony. And it doesn't simply rely on, oh, ComEd had 50% less in the past. Well, then it could do it again. No, it was his opinion that it was sufficient in 2023, in this year. So that was his testimony. Now that's to attract capital from a private investor, right? Well, ComEd's shares are wholly owned by its parent, Exelon. So Exelon would raise the capital, equity capital, and purchase shares and give it to the utility. So this is not going out and- Right, in the marketplace. ComEd doesn't have a stock that trades, its parent, Exelon stock that trades. And in fact, the cost of equity is set by statute. Or in the ordinary case, in the general rate-making case under Article 9, the commission would attempt to estimate what the cost of equity is in the market using market conditions, using financial models, dividend cash flow model, these other models. But under formula rates, it's set by statute. And that's in Section 16108.5C3. And it's the average of the 12-month, 30-year treasury plus 580 buoys. So that's set by statute. And the commission determined that that was adequate, and a 50% capital structure would be adequate to be able to attract that capital and maintain its integrity. Thank you. Okay. Justice Peterson? No other questions. Thank you, Mr. Stanton. Ms. Woody, rebuttal. Thank you, Your Honor. I'd like to get to two of the Council's points. The first is in relation to Council's discussion on the factors that ComEd set forth related to or in support of its capital structure, and the commission's order related to ComEd's discussion of those factors. I think what Council's argument illustrates is the problem, or really the reason why 16108.5 is set up the way that it is. The kind of analytical backfielding that I think we're seeing here today is what could have been offered in rebuttal at the time or during the proceeding, at which point the utility or ComEd would have had an opportunity to respond to that. If we take a look at the record in this case, our expert witness that explained the reason why we selected the capital structure that we did, did talk about the balancing act that goes into a capital structure determination. And I think it goes directly to Justice Peterson's question related to isn't this all about market conditions? It absolutely, capital structure is absolutely squarely within the judgment of a utility's leaders, its directors and financial managers of a corporation. And that is precisely why Illinois law has recognized that so long as that decision is reasonable, a public utilities commission cannot come in and substitute its judgment for that. There are a number of factors that go into a capital structure determination, and 16105 recognizes that and says, utility, present your capital structure, present what you considered. And all of the things that counsel presented today in his argument could have also been presented during the hearing, at which point the utility would have had an opportunity to rebut that. But because that didn't happen, and instead the commission inverted the burden of proof and failed to adhere to that standard, it also failed to comply with 16108.5D. The second point I want to briefly touch on is, again, this idea that a utility's capital structure cannot be more than necessary or more than what is sufficient to avoid, frankly, dire financial consequences. That is not the standard, and it's not the standard for a couple of reasons. Going back to what we've already discussed related to at the time a utility makes its capital structure determination, there are just so many unforeseeable circumstances and scenarios that will eventually impact a utility's financial forecast. But those decisions can, those scenarios haven't come to fruition yet, so we can't know that at the time this decision is made. This is why Illinois law has recognized that a utility or a prudence or reasonableness has to permit a range of permissible outcomes. What council is arguing for today necessarily requires that the utility somehow only make a singular optimal choice. It is essentially that we stand on the edge, but somehow don't go over, but still provide service. It cannot be the case that just because a utility's decision has a monetary impact on customers that it is unreasonable. There are a number of, at least in the context of ComEd, a number of weather, regulatory, legal impacts, business decisions that can all change where we end up. And this idea that we can somehow predict what the future will look like, and then the commission can come in and retroactively say, well, the decision that you made at the time before you knew that any of these things would happen is not optimal. It's just illogical, unworkable, and untenable, and not supported by the law. So, a lot of this comes down to where the burden is placed. And I guess my question is this. 9-201 places on the utility the burden of proof to establish the justice and reasonableness of the proposed rates. Why doesn't that support placing the burden on ComEd to prove that its capital structure is prudent and reasonable? For two reasons, Justice Brennan. Again, if we go back to that Chicago versus ICC case, that the notion that the justice and reasonableness requirement applies to every component of utilities rates has already been rejected by the courts. The second part of that- Courts or the first district? Or the first district. The second part of that is that there's a reason capital structure is different. So, going back to the idea that unlike, for example, how many poles or wires a utility decides to install, a capital structure determination is a complex financial decision. And the Illinois Supreme Court has recognized this and has specifically stated that so long as that decision is reasonable, a commission cannot substitute its judgment for that. Because of complexity that's required, we do often rely on our experts to kind of strike that balance about what is an appropriate capital structure determination. And 16-108.5 recognizes that through the burden and how it shifts the burden of proof to interveners to raise any objections they have with specificity. And we have to operate within the confines of what the law permits. And I see my time is up, so I'll close. And again, we respectfully request that this court reverse the commission's determination rejecting ComEd's actual capital structure. Thank you. Any follow-up questions, Justice Holder, Mr. Peterson? No, not for me. Thank you. All right. The court thanks both sides for spirited arguments. We will take the matter under advisement and render a decision in due course. Court is adjourned until the next set of oral arguments. Thank you.